# ]UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**AMANDA MIRACOLA,**

  **Plaintiff,**

  **v.**                                          **Case No. 19-CV-1242-SCD**

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

  **Defendant.**

---

## DECISION AND ORDER

---

Amanda Miracola applied for Social Security benefits in 2016, alleging that she is disabled based on various physical and mental impairments. Following a hearing, an administrative law judge (ALJ) denied benefits in 2018, finding that Miracola remained capable of working notwithstanding her impairments. Miracola now seeks judicial review of that decision, arguing that the ALJ erred in weighing the medical opinion evidence and evaluating the severity of her mental impairments. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. I agree with the Commissioner. Accordingly, his decision will be affirmed.

## BACKGROUND

Miracola was born on March 20, 1989. R. 647.[1] She attended school until her freshman or sophomore year in high school, when she started being home-schooled; she obtained a

---

[1] The transcript is filed on the docket at ECF No. 13-2 to ECF No. 13-17.

diploma in 2007. R. 648. At age 15, Miracola began feeling depressed and having mood swings. A few years later, she started experiencing back problems. Miracola has held various jobs throughout her adult life, including a busser at a restaurant, teaching in a daycare, doing embroidery for her mother's business, a cashier at a gas station, cleaning for an HVAC company, and in customer service at a fundraising company. R. 36–37, 268, 288–95, 648. Aside from some nannying, *see* R. 38–39, she has not worked December 1, 2012, R. 267.

In August 2016, Miracola applied for disability insurance benefits and supplemental security income from the Social Security Administration (SSA), alleging that she became disabled on December 1, 2012 (when she was twenty-three years old), her claimed last day of work. R. 249–50. Miracola asserted that she was unable to work due to the following medical conditions: depression, mood disorder, narcolepsy, anxiety, degenerative disc disease, and a bulging disc. R. 266. Based on her complaints of mental-health symptoms, the Wisconsin Disability Determination Bureau referred Miracola for a mental-status evaluation; Peter John Kores, EdD, examined Miracola on December 8, 2016, and filed a written report documenting the mental-status evaluation. *See* R. 647–53. After her applications were denied at the local level, *see* R. 64–139, Miracola requested an administrative hearing before an ALJ, *see* R. 188–92.

Miracola, along with her attorney, appeared before ALJ Timothy Malloy on August 14, 2018. R. 31–63. At the time of the hearing, Miracola was twenty-nine years old. She was living back at home with her parents and her eight-month-old son. R. 40–42. Miracola testified that she was unable to work due to back pain, narcolepsy, anxiety, and depression. R. 40, 50–51. She reported having difficulties understanding and remembering verbal instructions and concentrating. R. 51–52. As for her physical ailments, Miracola reported

2

difficulties standing and sitting for extended periods of time. R. 51–55. She also napped two to three times each day. R. 54–55.

The ALJ also heard testimony from Spencer Mosley, an impartial vocational expert. *See* R. 58–62. Mosley testified that a hypothetical person with Miracola's age, education, and work experience could not perform any of her past jobs if she were restricted to light work with additional, physical and mental nonexertional limitations. R. 59–60. However, that person could work as a mail clerk, an office helper, and a cleaner. R. 60–61. If restricted to sedentary work (with the same nonexertional limitations), the same individual, in Mosley's opinion, could work as a lampshade assembler, a machine tender, and a bench-work assembler. R. 61–62.

Applying the standard five-step process, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), on December 12, 2018, the ALJ issued a decision concluding that Miracola was not disabled. *See* R. 10–29. The ALJ determined that Miracola had not engaged in substantial gainful activity since December 1, 2012, her alleged onset date. R. 15. The ALJ found that Miracola's physical and mental impairments limited her ability to work, but none (alone or in combination) met or equaled the severity of a presumptively disabling impairment. R. 16–17. Specifically, with respect to mental impairments (depression and anxiety), the ALJ determined that Miracola had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. *Id.*

The ALJ next determined that Miracola had the RFC to perform light work, but (with respect to her mental health) "she is limited to unskilled work performing simple, routine, and

Case 2:19-cv-01242-SCD   Filed 07/29/20   Page 3 of 17   Document 23

repetitive tasks; she is limited to no interaction with the public, occasional interaction with coworkers; she is limited to no fast-paced production work; and she is limited to work that allows individually performed work tasks." R. 17. In assessing Miracola's RFC, the ALJ gave "great weight" to the opinions of the nonexamining state-agency psychological consultants and "less weight" to the more limiting opinions of Dr. Kores, the consultative psychological examiner, and Judith Lark,[2] a treating advanced practice nurse prescriber. R. 21–22. The ALJ determined that, in light of the above RFC, Miracola could not perform any past relevant work, but she could still work as a mail clerk, an office helper, and a cleaner; therefore, she was not disabled. R. 23–25.

After the SSA's Appeals Council denied review, *see* R. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016), Miracola filed this action on August 27, 2019. ECF No. 1. The matter was reassigned to me in April 2020 after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 21, 22. The matter is fully briefed and ready for disposition. *See* ECF Nos. 15, 19, 20.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

---

[2] The ALJ and the parties refer to Miracola's treating nurse as "Judith Lam"; the record clearly shows her last name is "Lark" (like the small ground-dwelling songbird), not "Lam" (like someone on the run from the feds). *See* R. 313, 468–86, 499–25, 647, 677–87, 709–12, 715–18, 817–20.

4

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing

*Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Miracola contends that the ALJ erred in weighing the medical opinions of Dr. Kores and Nurse Lark and in evaluating the severity of her mental-health impairments at step three of the sequential evaluation process.

I.     **The ALJ's Evaluation of the Medical Opinion Evidence**

**A.  Dr. Kores**

Dr. Kores examined Miracola on December 8, 2016. After talking with her and administering a series of mental-status examinations, Dr. Kores diagnosed major depressive disorder (recurrent, moderate) and anxiety disorder (not otherwise specified). R. 652. He believed that Miracola would have a moderate limitation in understanding and remembering simple instructions but perhaps a marked limitation in carrying them out. R. 653. Dr. Kores also believed that Miracola would have a moderate limitation responding appropriately to supervisors and a marked limitation in responding to coworkers. As for concentration, persistence, and pace, Dr. Kores opined that Miracola would have a moderate limitation with

6

concentration and attention but a marked limitation in work pace. Finally, he indicated that Miracola would have a marked limitation withstanding stressors or adapting to change.

The ALJ gave less weight to Dr. Kores's opinion for five reasons. First, Dr. Kores had met with Miracola only once and, in the ALJ's view, had "relied heavily on his personal observations and [Miracola's] subjective report in forming his opinion." R. 21. Second, the ALJ determined that "Dr. Kores' opinion is inconsistent with the evidence in the record[,] including evidence showing [Miracola] has not suffered from symptoms severe enough to require hospitalization since the alleged onset date." *Id.* Third, according to the ALJ, Dr. Kores's opinion "is inconsistent with evidence showing a generally good response to treatment that included counseling and medication." *Id.* (citing Exhibits 4F [R. 377–497] and 10F [R. 654–73). Fourth, the ALJ determined that "Dr. Kores' opinion is inconsistent with the nearly normal mental status examination findings that included well groomed, cooperative, normal psychomotor and speech, okay mood, euthymic affect, logical goal direct thought process, no delusion, obsessions, or compulsions, no suicidal ideation, and oriented in all spheres." R. 21 (citing Exhibit 18F [R. 815–27]). Finally, in the ALJ's view, Dr. Kores's opinion "is also inconsistent with evidence showing [Miracola] was able to work as a nanny[,] including caring for twins at one point and caring for three children at another[,] and with [Miracola's] report indicating she worked long hours." R. 21 (citing Exhibits 4F [R. 377–497], 6F [R. 526–45], and 7F [R. 546–639]).

Miracola argues that the reasons the ALJ gave for discounting Dr. Kores's opinion are flawed. She first contends that the ALJ erred in finding that Dr. Kores relied too heavily on his personal observations and Miracola's subjective complaints. *See* ECF No. 15 at 21. I agree.

> [O]pinions derived from subjective reports are not automatically suspect. . . .
> Like a medical doctor evaluating physical pain, a psychologist must start with

7

> the patient's description of her own experience; this is not a defect. Subjective complaints are nevertheless assessed according to the profession's objective criteria; what the psychologist puts out is not a simple transcription of the patient's self-report.

*Thompson v. Berryhill*, 722 F. App'x 573, 580–81 (7th Cir. 2018). Here, Dr. Kores did not merely transcribe Miracola's subjective complaints. Rather, he made his findings only after filtering those reports through his psychological expertise and administering a series of objective tests. Dr. Kores's reliance on his personal observations and Miracola's subjective complaints therefore was not a good reason for discounting his opinion. In fact, presumably all mental health evaluations rely primarily on the patient's subjective complaints and the treatment provider's observations.

Miracola also maintains that the ALJ should not have discounted Dr. Kores's opinion based on the fact that he saw her only once, because the state-agency psychological consultants—whose opinions the ALJ assigned great weight—did not examine her at all. *See* ECF No. 15 at 21–22. The SSA's regulations, however, require ALJs to consider the length of the treatment relationship and the frequency of examination in evaluating medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2). That the ALJ did not mention this factor when weighing the opinions of the state psychologists does not mean he erred in discounting Dr. Kores's opinion in part based on a limited treatment relationship.

Miracola next challenges the ALJ's finding that Dr. Kores's opinion was inconsistent with Miracola never having been hospitalized as a result of her mental-health symptoms, generally having a good response to treatment, and exhibiting nearly normal mental-status exams. *See* ECF No. 15 at 22–23. Although it is true that an absence of hospitalizations does not necessarily mean an individual is able to work, Miracola does not dispute the evidence the ALJ cited in support of these findings. Instead, she essentially requests that I reweigh the

8

evidence and substitute my opinion for that of the ALJ, asserting "that there is just as much evidence that is consistent with" Dr. Kores's opinion, ECF No. 20 at 5. Of course, the law precludes such review. *See Skarbek*, 390 F.3d at 503 (citation omitted) ("When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ.").

Moreover, Miracola does not identify any material evidence the ALJ failed to consider. The ALJ acknowledged that Miracola suffers from depression and anxiety and cited records documenting periods of worsening symptoms. *See, e.g.*, R. 19–20. Although the ALJ did not directly mention Miracola's self-admission to the emergency room in December 2012, *see* R. 358–65, he did accurately note that Miracola's worsening symptoms during that time were purely situational—she was struggling with a recent breakup and claimed to be having suicidal thoughts and engaging in self-harm, *see* R. 19; *see also* R. 364. Despite these ups and downs, as the ALJ noted, Miracola often reported that her medication was helpful in managing her symptoms. *See* R. 20 (citing Exhibits 4F/34 [R. 410], 4F/43 [R. 419], 4F/55 [R. 431], 11F/42 [R. 715][3]). In citing these records, the ALJ did not imply that Miracola's mental impairments didn't affect her ability to work; indeed, the ALJ's RFC contained several mental-health limitations, *see* R. 17. Rather, the ALJ reasonably determined that Miracola's response to treatment was inconsistent with Dr. Kores's more extreme limitations. And while it is true that the ALJ cited only one mental-status exam when discussing Dr. Kores's opinion, he mentioned several other normal exams elsewhere in the decision, *see* R. 19 (citing Exhibit 4F/28 [R. 404]); R. 19–20 (citing Exhibit 4F/31 [R. 407]); R. 20 (citing Exhibits 4F/41 [R. 417], 4F/96 [R. 472]). *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it

---

[3] The ALJ inaccurately cited this treatment note as 10F/42.

9

is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five . . . we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five."). The fact that "there are multiple other mental status exams that are consistent with Dr. Kores' findings," ECF No. 15 at 23, is not grounds for reversal. *See Scheck*, 357 F.3d at 699 (citation omitted) ("[T]he ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence.").

Finally, Miracola takes issue with the ALJ's reference to her work as a nanny, arguing that the ALJ failed to explain how this work was inconsistent with Dr. Kores's findings. *See* ECF No. 15 at 23. Maybe the ALJ left the theoretical bridge slightly unfinished, but it takes only a short inferential step to see how working long hours caring for multiple young children at a time, *see* R. 20 (citing Exhibits 4F/43 [R. 419], 4F/55 [R. 431], 4F/95 [R. 471][4]); R. 20–21 (citing Exhibit 7F/2 [R. 547]; R. 21 (citing Exhibits 4F/104 [R. 480] 6F/19 [R. 544]), is inconsistent with a moderate limitation understanding and remembering simple instructions, a marked limitation carrying out simple instructions, a moderate limitation responding to supervisors (i.e., the caregivers), a marked limitation responding to coworkers (i.e., the kids), and a marked limitation withstanding work stressors and adapting to changes; the ALJ did not, as Miracola suggests, construct a bridge to nowhere. Miracola also criticizes the ALJ for relying on her work as a nanny given that, in the ALJ's own estimation, this work did not rise to the level of substantial gainful activity. ECF No. 15 at 23. But the ALJ did not cite Miracola's nannying to suggest that she could work full-time. Rather, he reasonably concluded

---

[4] The ALJ inaccurately cited this treatment note as 4F/92.

that her ability to work as a nanny for several years after her alleged onset date, even if it was below the substantial-gainful-activity level, was inconsistent with the extreme mental-health limitations opined by Dr. Kores.

In sum, while the ALJ may have erred in finding that Dr. Kores relied too heavily on his personal observations and Miracola's subjective reports, such error was harmless, as the ALJ provided other, independently valid reasons for discounting Dr. Kores's opinion. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.").

## B. Nurse Lark

Nurse Lark began treating Miracola's mental impairments in May 2016. *See* R. 468–74. On October 14, 2016, after having seen Miracola three additional times, *see* R. 475–78, 479–83, 483–86, Nurse Lark filled out a Mental Residual Functional Capacity Questionnaire, *see* R. 366–70. Nurse Lark indicated that, for unskilled work, Miracola would have a limited but satisfactory ability to remember work-like procedures, maintain attention for a two-hour segment, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions. R. 368. Nurse Lark further indicated that Miracola would have serious but not work-preclusive limitations completing a normal workday and workweek without interruptions from psychologically based symptoms and dealing with normal work stress. *Id.* When asked about Miracola's abilities to do particular types of jobs, Nurse Lark indicated that Miracola would be seriously limited in her ability to interact appropriately with the general public and maintain socially appropriate behavior. R. 369.

11

Although the ALJ gave some weight to Nurse Lark's moderate (or less) limitations, he found that her more severe limitations were entitled to less weight, as they were inconsistent with the record. R. 22. To support this latter finding, the ALJ offered several of the same reasons he provided for discounting Dr. Kores's opinion: Miracola's mental-health symptoms did not require hospitalization since the alleged onset date, Miracola generally had a good response to treatment, Miracola's mental-status exams were relatively normal, and Nurse Lark's extreme limitations were inconsistent with Miracola's work as a nanny. R. 22 (citing Exhibits 4F [R. 377–497], 10F [R. 654–73], 18F [R. 815–27], 6F [R. 526–45], 7F [R. 545–639]). The ALJ also mentioned that Nurse Lark had seen Miracola only four times. R. 22.

Miracola repeats the same objections she raised in relation to Dr. Kores's opinion. *See* ECF No. 15 at 23. However, as explained in detail above, the ALJ provided only one flawed reason for discounting Dr. Kores's opinion (a reason that was not offered with respect Nurse Lark's opinion); the other four were supported by substantial evidence. Accordingly, Miracola has not shown that the ALJ erred in evaluating Nurse Lark's opinion.

## II. The ALJ's Step-Three Finding

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926) (called "The Listings"). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir. 2003); *Steele*, 290 F.3d at 940).

12

"For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. §§ 404.1525, 416.925 ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."). The mental-health listings at issue here—Listing 12.04 (depressive, bipolar, and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders)—required Miracola to satisfy the requirements of both paragraphs "A" and "B" of the listing or the requirements of both paragraphs "A" and "C" of the listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A2, 12.04, 12.06. "Paragraph A of each listing . . . includes the medical criteria that must be present in [the] medical evidence." *Id.* § 12.00A2a. To satisfy the paragraph "B" criteria for Listing 12.04 and Listing 12.06, Miracola needed to demonstrate that her mental impairments resulted in an "extreme" limitation of one, or a "marked" limitation of two, of the following four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 12.00A2b. To satisfy the paragraph "C" criteria for Listings 12.04 and 12.06, Miracola needed to demonstrate that her mental impairment was "serious and persistent." *Id.* § 12.00A2c.

The ALJ determined that Miracola's mental impairments did not satisfy the criteria of Listing 12.04 or Listing 12.06. R. 16–17. Specifically, in considering whether the paragraph "B" criteria were satisfied, the ALJ determined that Miracola had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing himself. *Id.* The ALJ also found that "the evidence fail[ed]

13

to establish the presence of the 'paragraph C' criteria." R. 17. Nevertheless, the ALJ included several mental-health restrictions in the RFC, limiting Miracola to: "unskilled work performing simple, routine, and repetitive tasks; . . . no interaction with the public, occasional interaction with coworkers; . . . no fast-paced production work; and . . . work that allows individually performed work tasks." *Id.*

Miracola argues that the ALJ failed to make a proper paragraph "B" finding at step three. *See* ECF No. 15 at 24–26. I see no reversible error. *First*, the ALJ discussed each listing by name and offered more than a perfunctory analysis. With respect to the paragraph B criteria, the ALJ analyzed each of the four areas of mental functioning and cited evidence to support his findings. As for Miracola's ability to interact with others, the ALJ explained that, despite "report[ing] some problems with irritability and anger," R. 16 (citing Exhibit 4F [R. 377–497]), Miracola had no limitation in this area because "the treatment records describe [her] as pleasant, happy and cooperative, which suggests an ability to engage in positive and appropriate social interactions," R. 16 (citing Exhibits 4F/28 [R. 404], 34 [R. 410] and 9F [R. 646–53]). Regarding concentration, persistence, and pace, the ALJ explained that Miracola "retain[ed] the capacity for activities demanding some degree of concentration persistence, or pace," including "cooking simple meals, performing household chores, shopping, driving, handling money, and doing crossword puzzles"; thus, she had only a moderate limitation in this area. R. 17 (citing Exhibits 3E [R. 280–87] and 9E [R. 319–26]). Miracola has not cited any evidence to contradict these findings.[5]

*Second*, assuming for the sake of argument that the ALJ's analysis was perfunctory, Miracola has failed to show that either of her mental impairments satisfied all the specified

---

[5] Miracola does not take issue with the other two areas of mental functioning.

medical criteria. She contends that she would have met the criteria of a listing if the ALJ had given proper weight to the opinions of Dr. Kores and Nurse Lark. But, for the reasons explained above, the ALJ did not err in weighing either of those medical opinions. Miracola has not pointed to any evidence, aside from the opinions of Dr. Kores and Nurse Lark, supporting an extreme or marked limitation in any of the four areas of mental functioning. Moreover, the ALJ's step-three analysis is supported by the opinions of the state-agency psychological consultants, *see* R. 74, 92, 113, 131, whose opinions the ALJ assigned great weight, *see* R. 21, and are unchallenged here.

Miracola also contends that the ALJ's finding of no limitation in interacting with others is inconsistent with the ALJ's RFC determination, which included limitations on Miracola's interaction with the public and coworkers. I disagree. As the ALJ correctly noted in his decision, *see* R. 17, the limitations shown for the paragraph "B" criteria are used only to rate the severity of the mental impairment at steps two and three of the sequential evaluation process; they are not a residual capacity assessment. *See* SSR 96-8p, 1996 SSR LEXIS 5 at *13 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of

Impairments, and summarized on the PRTF."). Miracola has not cited any authority suggesting that the ALJ's paragraph "B" findings must mirror his RFC finding.[6]

Miracola also has not explained how she was harmed by the alleged inconsistency between the ALJ's step-three finding and the ALJ's RFC assessment. As the ALJ explained, the social-interaction limitations included in the RFC accounted for Miracola's "moderate limitations in social functioning imposed by depression and anxiety." R. 23. He plainly did not believe that Miracola had an extreme or marked limitation interacting with others. Thus, because Miracola needed to demonstrate that her mental impairments resulted in either an extreme limitation of one area or a marked limitation of two areas, any error by the ALJ was harmless.

Finally, even if Miracola could show that her mental impairments met the paragraph "B" criteria, she has not made any attempt to demonstrate that the paragraph "A" or paragraph "C" criteria for Listings 12.04 or 12.06 were satisfied. She therefore has not established reversible error at step three.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ did not commit reversible error in weighing the opinions of Dr. Kores or Nurse Lark or in evaluating the severity of Miracola's mental impairments at step three of the sequential evaluation process. Thus, the

---

[6] Implicitly conceding the lack of authority supporting her argument, Miracola instead relies on "common sense." *See* ECF No. 20 at 2–3.

Commissioner's decision is **AFFIRMED**. The clerk of court shall enter judgment accordingly.

 **SO ORDERED** this <u>29th</u> day of July, 2020.


           _____
           STEPHEN C. DRIES
           United States Magistrate Judge